IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DEANNA COOPER :
 :  No.: 1:09-CV-241
v. :
 :  Mattice/Carter
UNUM LIFE INSURANCE COMPANY OF :
AMERICA AND UNUM GROUP :
CORPORATION :

## REPORT AND RECOMMENDATION

### Introduction

Plaintiff, Deanna Cooper, has brought this action for recovery of benefits under a Group Accidental Death and Dismemberment Policy (the "Policy") brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"). Plaintiff, who submitted a claim for benefits based upon her husband's death, seeks to overturn Unum's determination that she is not entitled to benefits under the Policy. In accordance with the procedure established in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998), Unum moves for judgment on the record affirming its determination.

Plaintiff's motion for judgment on the ERISA record [Doc. 13], Defendants' motion for judgment on the administrative record [Doc. 15] and Plaintiff's reply [Doc 18] are before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). After carefully reviewing the record and the parties' motions and supporting pleadings, and for the reasons stated herein, I RECOMMEND that 1) Defendants' motion for judgment on the administrative record be GRANTED; 2) Plaintiff's motion for judgment on the ERISA record be DENIED and 3)

Defendants' decision denying Plaintiff recovery of benefits under the Group Accidental Death and Dismemberment Policy be AFFIRMED.

Background

A.      The Claimant and Relevant Policy Provisions.

Plaintiff filed this action seeking to enforce her rights under ERISA § 502(a), 29 U.S.C. § 1132(a).  Plaintiff, Deanna Cooper, was employed as a customer service representative by Con-Way Inc.  (AR 16 – 18). By virtue of her employment, Plaintiff obtained Accidental Death and Dismemberment insurance coverage under a Unum Life Insurance Company policy; she elected "family" coverage, covering both her spouse and child.  Mr. Cooper, her spouse, died August 21, 2008, following a severe fall in which he fractured seven ribs.  Plaintiff', filed a claim for death benefits with the Defendants.  Plaintiff's spouse, William Cooper, was a covered dependant under the Policy, and Plaintiff was her husband's beneficiary for the accidental death and dismemberment benefit ("AD&D Benefit") totaling $125,000.  (AR 16 – 18; 29). The claim was denied initially and on appeal; Unum asserted that Mr. Cooper's death was caused or contributed to by an illness, such that coverage for the loss was excluded under policy terms.

The Policy provides the AD&D Benefit for the loss of life which is the result of an injury.  (AR 30).  The Policy expressly defines "injury" as follows:

> Injury means a bodily injury that is solely caused by external, violent and
> accidental means and is independent of any other cause.

(AR 28).  The Policy also contains the following exclusion:

> We will not pay any claim for loss that is caused by, contributed to by, or
> resulting from: disease of the body, bodily or mental infirmity . . . .

(AR 32 – 33).

       B.      Mr. Cooper's Medical History including Cirrhosis of the Liver, Hepatitis C, and Pulmonary Hypertension.

Mr. Cooper had a history of medical problems including cirrhosis and liver disease. In 2004, he had a liver biopsy which indicated "cirrhosis (stage 4 fibrosis) and mild activity (grade 1)." (AR 143; 639; 730). In August 2007, when he was hospitalized several times for various health issues, his physicians referenced his past history of chronic hepatitis and cirrhosis of the liver. (AR 238 – 239; 246; 253; 639; 640). Throughout 2007 and 2008, Dr. Ivan Robbins, a Vanderbilt pulmonologist who treated Mr. Cooper for pulmonary hypertension, noted his "significant medical diagnoses and conditions" and past medical history included "chronic hepatitis C with cirrhosis" and "pulmonary hypertension associated with liver disease." He was reported to be doing well, however (AR 143 – 149). Mr. Cooper underwent treatment for his chronic hepatitis C for several months beginning in October 2007 through May 2008, though that treatment proved unsuccessful. (AR 639 – 711). In assessing Mr. Cooper for this treatment, the records reflect his past medical history as "positive for pulmonary hypertension secondary to cirrhosis of the liver." His assessment was chronic hepatitis C, genotype 3a; cirrhosis of the liver and pulmonary hypertension, secondary to liver disease (AR 639 – 640).

       C.      Events Leading Up to Mr. Cooper's Death.

On the night of August 20, 2008, Crockett County Ambulance Service was dispatched to Mr. Cooper's residence located in Gadsden, Tennessee. (AR 176 – 177). Mr. Cooper, while apparently under the influence of alcohol and cocaine, had a fainting episode and fell in his home around seven o'clock p.m. (AR 162 – 165; 176 – 177; 220; 226). The ambulance transported Mr. Cooper to Humboldt General Hospital. (AR 176 – 177). The emergency room physician, Dr. Beryl Yancey, listed his "principal and significant diagnosis[sic]" as follows:

1. Liver failure with increasing abnormal liver function lab studies.
2. Pulmonary hypertension secondary to cirrhosis of liver.
3. Chronic hepatitis.
4. Fracture of fifth, sixth, seventh, eighth and ninth ribs secondary to fall.
5. Syncopal episode.
6. Posterior scalp hematoma.
7. Left corneal abrasion.
8. Noncompliance.
9. Alcohol abuse and cocaine use.

(AR 220).

Dr. Yancey also noted Mr. Cooper "is currently on interferon treatment for liver failure." (AR 220). The record is not clear about how Mr. Cooper fell, or even what time of day it was; it is clear, however, that it was a severe fall. An x-ray revealed Mr. Cooper had acute fractures of ribs number five through nine on his left side (AR 222). Later, the autopsy revelaed he had also fractured ribs ten and eleven, for a total of seven rib fractures (AR 061).

Around 12:30 the next day, August 21, 2008, Mr. Cooper's condition declined. He had an episode of bradycardia and low oxygen saturation. (AR 222).

Medical reports indicated Mr. Cooper had consumed a quarter a bottle of liquor around two o'clock p.m. that day, and that he drinks approximately a quart of liquor 2 to 3 times per week. (AR 221; 226). A urine test performed on August 21, 2008 was positive for cocaine and opiates. The discharge summary reflects the doctor was unaware the patient was taking tylenol and drank 16 twelve ounce cans of beer prior to admission, until he was advised of this by a family member who had been with Mr. Cooper the prior day. The patient had stated he had drunk 1 quart of beer at 2 p.m. prior to admission (AR 223).

After he was temporarily stabilized, transfer was arranged to Jackson Madison County General Hospital. *Id.* After being admitted to Jackson Hospital, while waiting in the ER for

transport to the ICU, he"suddenly became agitated and complained of shortness of breath." (AR 348). Just a few minutes later, the doctor was called back into Mr. Cooper's room because he had "grabbed his chest and reportedly turned blue;" doctors were unable to revive him. *Id.* Mr. Cooper was pronounced dead at 4:48 pm on August 21, 2008 (AR 353), approximately twenty-one hours after his fall (AR 102; 157; 348). Dr. Michael Revelle, the emergency room physician at Jackson Madison, was unsure of the cause of death. Dr. Revelle noted Mr. Cooper's initial confusion/ agitation was sought [sic] to be due to an elevated ammonia level and with elevated liver functions. Dr. Revelle assessed cardiac arrest most likely secondary to pulmonary embolus (AR 348 – 349). At the request of Mr. Cooper's family, the Madison County Medical Examiner ordered an autopsy be performed. (AR 157; 349).

> D.  Autopsy Results - Cirrhosis as a Contributory Cause of Death.

Dr. Thomas Deering, a forensic pathologist with the Tennessee Department of Health and Environment Office of the State Medical Examiner, performed an autopsy on Mr. Cooper on August 22, 2008. (AR 158 – 168). The autopsy found evidence of blunt force injuries consisting of lateral fractures of Mr. Cooper's left ribs number five through eleven. (AR 160). Additionally, over a liter of blood was found in Mr. Cooper's abdomen; however, no clear source of the bleeding was identified. (AR 160, 162). Dr. Deering also found Mr. Cooper had micronodular cirrhosis. (AR 161; 163). "Also notable in the autopsy was hypertensive cardiovascular disease and pulmonary emphysema. Toxicology showed cocaine and ethanol." (AR 163). Ultimately, Dr. Deering concluded:

**CAUSE OF DEATH:** Intra-abdominal hemorrhage due to blunt trauma injuries
to the torso

**CONTRIBUTORY CAUSE OF DEATH:** Cirrhosis of liver

**MANNER OF DEATH:**      Accident

**CIRCUMSTANCES OF DEATH:** Fell at residence

(AR 159; 163).

The Death Certificate completed by Dr. Deering listed the "immediate cause" of death as "intra-abdominal hemorrhage" caused by blunt trauma injuries to the torso." (AR 102). Consistent with his autopsy report, Dr. Deering also listed on the Death Certificate "cirrhosis of liver" as a "significant condition contributing to" Mr. Cooper's death.[1] (AR 102).

E.      Plaintiff's Claim for Benefits.

Plaintiff submitted her claim for recovery of the AD&D Benefit under the Policy in September 2008. (AR 16; 37 – 38). Unum then began collecting medical records in connection with its investigation and review of the claim. (AR 37 – 38).

F.      Plaintiff's request that Dr. Deering Alter the Death Certificate by Removing Cirrhosis as a Contributory Cause of Death.

During the course of Unum's investigation of Plaintiff's claim, Plaintiff had various communications with Dr. Deering both by telephone and by letter inquiring whether he would change Mr. Cooper's Death Certificate by removing cirrhosis as a contributing cause of death. (AR 559; 756; 817). By letter dated March 4, 2009, Dr. Deering replied to Plaintiff's "letter of inquiry"[2] concerning her husband's death, stating:

---

[1] This language appearing on the Death Certificate in the Administrative Record is difficult to read due to the print size and smearing. An exemplar copy of a Tennessee Certificate of Death is provided by Defendant, attached to Defendant's memorandum (Doc 16, Exhibit 1.) Dr. Deering placed "cirrhosis of the liver" on Part II of the autopsy report in the heading entitled: "Other Significant Conditions Contributing to Death but Not Resulting in the Underlying Cause Given in Part I".

[2] Plaintiff's letter to Dr. Deering is not contained in the Administrative Record.

You may not be aware, but cirrhosis of the liver is a disease that is highly associated not only with easy bruisability, but with increased bleeding from any source of trauma or even less traumatic sources of bleeding, like nosebleeds, hemorrhoids, and stomach ulcers. **Due to the nature of the finding of a large bleed within the abdomen on your husband's autopsy, the cirrhosis of the liver becomes very relevant and is definitely, in my opinion, a contributing factor to the amount of the bleeding that was found.**

Although I am amenable to try and help in the resolution of your insurance claim, **I do not feel that I can leave off the cirrhosis of the liver as if it had nothing to do with the cause of death.**

\*   \*   \*

(AR 817) (emphasis added).

G.   After Reviewing Plaintiff's Claim, the Medical Records, the Autopsy Report, the Death Certificate, and the Conclusions of Unum's Internal Forensic Pathologist, Unum Determined there is No Coverage under the Policy.

After collecting Mr. Cooper's medical records including the autopsy report and Death Certificate, Unum referred the entire file to medical consultant Dr. Kristin Sweeney, a forensic pathologist, for a clinical review. (AR 730 – 738). After a thorough review of the file, Dr. Sweeney concluded:

Coagulopathy (an abnormal bleeding tendency) due to chronic hepatitis C with cirrhosis, and thrombocytopenia (low platelets, which cause abnormal bleeding) due to hypersplenism resulting from portal hypertension due to cirrhosis, which is a disease of the body, significantly contributed to Mr. Cooper's terminal intra-abdominal hemorrhage from an unidentifiable source, approximately 21 hours after a fall with blunt force trauma to the torso resulting in multiple left rib fractures.

(AR 738).

Upon the completion of its claim review, Unum determined that accidental death benefits were not payable under the Policy, and so advised Plaintiff by letter dated April 3, 2009. (AR 747 – 750). The letter advised that based upon Mr. Cooper's medical records, the Death

Certificate, the autopsy report, and Dr. Sweeney's clinical review and conclusions, Unum determined that Mr. Cooper's death was significantly contributed to by cirrhosis of the liver. (AR 748). Specifically, Unum determined Mr. Cooper's death is not a covered loss under the Policy because the loss was not solely caused by external, violent and accidental means independent of any other cause as the Policy language requires. (AR 747 – 750). Further, based upon both Dr. Deering's and Dr. Sweeney's unrefuted opinions and conclusions, Unum also determined that the claim was excluded because Mr. Cooper's death "was significantly contributed to by his cirrhosis of the liver which led to an abnormal bleeding tendency due to chronic hepatitis C with cirrhosis, a disease of the body." (AR 749).

H.      Plaintiff's Appeal.

Plaintiff appealed Unum's decision by letter dated May 5, 2009. (AR 788 – 789). Plaintiff asserted Unum's determination was incorrect because cirrhosis was not the cause of her husband's death, cirrhosis had no previous effect on his health, and there were no findings of cirrhosis or diagnosis of coagulopathy prior to her husband's death. (AR 788). However, Plaintiff only offers lay opinion to support the absence of cirrhosis as a significant cause of death. She failed to offer any medical evidence or opinion to rebut the opinions by Dr. Deering and Dr. Sweeney. (AR 788 – 789). Plaintiff offered Dr. Deering's letter of March 4, 2009, which unequivocally stated that cirrhosis was a contributing cause of, and "very relevant" to, Mr. Cooper's death. (AR 776 – 779; 795).

After consideration of Plaintiff's appeal and Dr. Deering's March 4, 2009 letter, Unum informed Plaintiff by letter dated May 19, 2009 that its original decision to deny Plaintiff's claim was appropriate. (AR 793 – 796). Unum reiterated the evidence contained in the record which

supported its original decision and also pointed out that Plaintiff's submission of Dr. Deering's March 4, 2009 letter further supported Unum's decision. (AR 795).

As of May 19, 2009, Plaintiff had exhausted her administrative remedies and the Administrative Record was closed. (AR 793 – 796). Plaintiff filed this case on September 14, 2009. (Court File No. 1).

Analysis

Standard of Review

Procedure

The Sixth Circuit has ruled that summary judgment procedures are inapposite to ERISA actions to recover benefits and, thus, should not be utilized in their disposition. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Instead, the *Wilkins* court offered the following guidance to the district courts for adjudicating ERISA claims for benefits:

> As to the merits of the claim, the court should conduct either a "*de novo*" or "arbitrary and capricious" review based solely on the administrative record which had been before the plan administrator/decision maker. In doing so, the court should consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record. However, with certain narrowly drawn exceptions, review is restricted to the evidence presented to the administrator.

*Id.*

Under such a regime, summary judgment motions of "genuine issue of material fact" make little sense. Either the administrator's decision is (on *de novo* review) incorrect or it is not; or, it is arbitrary and capricious or not. Therefore, once the Court reviews the parties' motions and briefs, the Court should enter judgment, not summary judgment. *Id.*

9

Arbitrary and Capricious vs. De Novo

The general rule in ERISA claims for benefits is that the Court will review the administrator's decision *de novo*; however, if an administrator is properly granted discretion in the ERISA plan documents, the administrator's decision is entitled to deference and is subject to an arbitrary and capricious standard of review. *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Here, plan documents do not include a grant of discretion. There is no dispute as to this finding. The Court must therefore apply the *de novo* review standard. In the ERISA context, pursuant to the *de novo* standard of review a court "is bound by the provisions of the documents establishing an employee benefit plan without deferring to either party's interpretation." *Wulf v. Quantum Chem. Corp*., 26 F.3d 1368, 1373 (6th Cir. 1994). The role of a reviewing court in applying the *de novo* standard is to determine whether the administrator made a correct decision. *Perry v. Simplicity Eng'g, a Div. of Lukens General Indus., Inc*., 900 F.2d 963, 966 (6th Cir. 1990). Although this review is performed without deference to the administrator's decision, it must be based on the record before the administrator at the time of its decision; thus, courts are precluded from considering evidence not presented to the plan administrator in connection with a claim. *Id*.; *Wilkins*, 150 F.3d at 615.

Burden of Proof

Plaintiff bears the burden of proving that she is entitled to benefits under the terms of the Policy. *Rose v. Hartford Fin. Servs. Group, Inc.,* 268 Fed. Appx. 444, 452 (6th Cir. 2008); *Tracy v. Pharmacia & Upjohn Absence Payment Plan,* 195 Fed. Appx. 511, 516 n. 4 (6th Cir.

2006); *Glover v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 07-2808-STA, 2009 WL

3169691, *8 (W.D. Tenn. Sept. 29, 2009).

However, if the decision to deny benefits is premised on an exclusion from coverage, the

Defendant must carry the burden of proof by a preponderance of the evidence. "ERISA places

the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the

plan administrator." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002).

> According to common law trust principles, the administrator of an ERISA-regulated plan
> has the burden to prove exclusions from coverage. *See Farley v. Benefit Trust Life Ins.
> Co.,* 979 F.2d 653, 658 (8th Cir.1992). Inasmuch as UNUM seeks to establish an
> exclusion from coverage, the burden rests with it to establish by a preponderance of the
> evidence that the Pre-Existing Condition exclusion prevents Caffey from prevailing.
> *Miller v. United Welfare Fund,* 72 F.3d 1066, 1074 (2d Cir.1995) (citing *Fuja v. Benefit
> Trust Life Ins. Co.,* 18 F.3d 1405, 1408 (7th Cir.1994)); *Farley,* 979 F.2d at 658.

> *Caffey v. Unum Life Ins. Co. of America*, 107 F.3d 11 (Table), 1997 WL 49128 at *3 (6th

Cir. 1997) attached as Exhibit A. Therefore, if denial is based on an exclusion from the policy,

the Defendants must show by a preponderance of the evidence, on *de novo* review, without any

deference granted to their pre-litigation denial rationale, that Plaintiff's claim is excluded by the

policy.

<u>Issues</u>

Plaintiff in argument asserts the following:

I. Because Unum's stated rationale in denying death benefits is an exclusion to coverage,
Unum bears the burden of proof.

II. Benefits under an accidental death and dismemberment policy may be excluded on
the basis of illness or pre-existing condition only if that illness "substantially contributed to the
loss"; pre-disposition or susceptibility are not enough. Plaintiff then argues since the record only
demonstrates mildly depressed platelet count and no other type of coagulopathy, Unum cannot
show Mr. Cooper's liver disease "substantially contributed" to his death.

III.  Unum's application of the exclusionary language - "caused by, contributed to by, or resulting from..." is overbroad and contrary to established case law.


## Analysis

I will address the issues raised by Plaintiff in the order presented.

### I.

Plaintiff asserts the Defendants have stated in their denial letters they do not contest that Mr. Cooper did, in fact, suffer an accidental death.  Plaintiff contends the sole stated reason for denying this claim is that the policy excludes otherwise payable accidental deaths when they were "caused by, contributed to by, or resulting from…disease of the body."  They argue this was the only rationale ever offered to Mrs. Cooper during the claims process, and it is the only rationale Unum may rely on before the Court.  Because the Defendants rely on an exclusion to coverage under the policy, continues the argument, they must carry the burden of proving their theory by a preponderance of the evidence. "ERISA places the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator."  *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002).  This is true where, as here, a policy provision serves to exclude claims that would be otherwise payable under the terms of the policy.

Plaintiff notes an administrator's decision may be upheld, if at all, only based upon the administrator's stated rationale in the administrative record, without resort to *post hoc* rationalizations.  *See University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 849 (6th Cir. 2000).  *See also Shelden v. Barre Belt Granite*, 25 F.3d 74 (2nd Cir. 1994) (district court cannot affirm a denial of benefits by ascribing to the plan a reason for denial other than the one proffered to the claimant); *Short v. Central States, Southeast & Southwest Areas Pension*

*Fund*, 729 F.2d 567, 575 (8th Cir. 1984) ("[a] post hoc attempt to furnish a rationale for a denial of pension benefits in order to avoid reversal on appeal . . . diminishes the integrity of the Fund and its administrators."); *Dishman v. UNUM Life Ins. Co. of Am.*, 250 F.3d 1272, 1283 (9th Cir. 2001) (in regards to new rationale offered first in court: "the fact that UNUM may be able, post-hoc, to offer a legally plausible justification for its termination of Dishman's benefits is irrelevant"); *Doe v. Group Hospitalization*, 3 F.3d 80 (4th Cir. 1993) (refusing to consider reasons not given to the participant).

Plaintiff further contends any attempt by Unum to "change horses midstream," by offering a new rationale to the Court that was never offered to Mrs. Cooper previously, would be improper, because the entire point of the administrative appeals process, and of requiring claimants to exhaust their administrative remedies prior to filing suit, is so that each side knows the other's rationale, and has an opportunity to respond to it in the record. The administrative record is now closed, and Unum's denial of these benefits may be affirmed, if at all, based solely on the rationale it stated in the denial letters.

I do not see Unum's position to be one of "changing horses in mid stream." Both of their arguments, that the injury was not by accident, *independently of any other cause* and that benefits were not payable because of a policy exclusion are based on the same facts, the other significant medical conditions that contributed to Mr. Cooper's death. They are "riding the same horse," it just applies in two ways based on the language of the contract. Further, in their April 3, 2009 denial letter, Unum explains there are two bases for their denial, one because his death was not "independent of any other cause (R.748) and also because of the policy exclusion that his death was significantly contributed to by his Cirrhosis and other medical conditions" (AR

749).  I agree with Plaintiff that as to the policy exclusion, Unum must bear the burden of proving, by a preponderance of the evidence, that other medical conditions contributed to his death.  Furthermore, under the *de novo* standard of review in effect in this case, Unum must prove this without the Court granting any deference to its conclusions.

On the other hand, the Defendant contends, and I agree with their contention, that there are two bases on which the Court can affirm the denial of benefits, both of which are based on the presence of significant medical conditions which contributed to the decedent's cause of death. Unum correctly argues the Policy expressly requires  the injury must be "solely caused by external, violent and accidental means" and is "independent of any other cause."  (AR 28). Thus, Plaintiff has the burden of proving two elements in order for the death to be a loss covered under the Policy: it must be (1) solely accidental, and (2) independent of any other cause.  (AR 747).  Because the Policy covers injuries that result from an accident independent of any other cause.  Plaintiff bears the burden of showing that the *sole cause* of Mr. Cooper's death was an accident.  "In other words, the coverage burden is not on Defendant insurer to show that the death would have occurred regardless of the precipitating accident.  Rather, the burden is on Plaintiff insured/beneficiary to prove by a reasonable degree of medical probability that the death would have occurred 'independent' of the victim's health problems (i.e. the accident must be the sole cause)."  *Honican v. Stonebridge Life Ins. Co.,* 455 F.Supp.2d 662, 666, 667- 668 (E.D. Ky. 2006) (a non-ERISA case in which the court found that although the "accidental fall was indeed the catalyst that triggered the unfortunate chain of events leading to Ms. Anderson's death," the insurer "must prevail as a matter of law because Plaintiff has not shown that the death of Ms. Anderson would have taken place as a result of the fall without the existence of the

victim's prior medical conditions."); *Brock v. Zurich American Ins. Co.,* No. 3:07-CV-318, 2009 WL 2244610, *3 (E.D. Tenn. July 27, 2009) (a non-ERISA case recognizing that "independently of all other cause" language precludes coverage if the loss "is the result of the concurrence of accidental injury and a pre-existing bodily infirmity or disease") (quoting *Minyen v. Am. Home Assur.*, 443 F.2d 788, 790 (10th Cir. 1971)).

In the context of a policy governed by ERISA, "an administrator's denial of benefits is proper where the decedent had a pre-existing medical condition that contributed to the decedent's death." *Alstork v. AIG Life Ins. Co.*, No. 3:07-CV-303, 2008 WL 2788062, *8 (S.D. Ohio July 15, 2008) (citing *Anderson-Tully Co. v. Pan Am. Life Ins. Co.,* No. 96-5348, 1997 WL 359079, *2 (6th Cir. June 26, 1997); *Criss*, 1992 WL 113370 at *6; *Corum v. Hartford Life and Accident Ins. Co.,* 553 F.Supp.2d 800, 806 (E.D. Ky. 2008)).

In the present case, in order to prevail, Plaintiff must have shown by a reasonable degree of medical probability that Mr. Cooper's fatal abdominal bleeding would have resulted solely from his fall, irrespective of his cirrhosis. Defendant notes that Plaintiff has failed to offer any competent medical proof sufficient to meet her burden on this issue. Further, the autopsy indicates cirrhosis was a another significant condition which contributed to the death. For these reasons, her claim fails. *See Patterson v. Stonebridge Life Ins. Co.*, No. 05-71485, 2005 WL 2491448, *5 (E.D. Mich. Oct. 6, 2005) (noting that plaintiff could have provided evidence from physicians stating their belief that decedent's obesity did not contribute to her death; absence of such proof resulted in plaintiff failing to carry burden and warranting dismissal of case).

I agree with Defendant that all medical doctors who have given opinions regarding the causes of Mr. Cooper's death have concluded that cirrhosis of the liver, a disease of the body,

contributed to bringing about his death. Thus, Plaintiff's contention that Mr. Cooper's death was solely caused by accidental means independent of any other cause is not supported by the record.

II.

Plaintiff next argues benefits under an accidental death and dismemberment policy may be excluded on the basis of illness or pre-existing condition only if that illness "substantially contributed to the loss;" pre-disposition or susceptibility are not enough. In support of this factually, plaintiff then argues since the record only demonstrates mildly depressed platelet count and no other type of coagulopathy, Unum cannot show Mr. Cooper's liver disease "substantially contributed" to his death.

Plaintiff argues there is a long line of cases, culminating in the Sixth Circuit Court of Appeals, which holds that exclusionary language such as that in this policy can not be used to exclude claims unless the disease or illness "substantially contributed to the loss." Plaintiff cites *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir. 1990), where the court held that bodily infirmity or disease could not be used as an exclusion to coverage under similar policy language "unless it substantially contributed to disability or loss; predisposition or susceptibility to injury, whether it resulted from congenital weakness or from previous illness or injury, does not necessarily amount to substantial contributing cause." *Id.* (citing *Weartz*, and finding that it was the best rule to adopt of all alternatives). The court held that even though the plaintiff had a prior back injury, resulting in a prior fusion surgery, this exclusionary language could not bar his claim for disability benefits under an accident policy when he stepped in a hole and injured his back again. Defendant points out in response that the *Adkins* court expressly stated the "contributed to" exclusionary clause was not at issue.

Plaintiff also cites *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017 (4th Cir. 1993), in which the Fourth Circuit restated the rule in two parts: "first, whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and, second, whether this pre-existing condition, pre-disposition, or susceptibility substantially contributed to the disability or loss." *Id.* at 1028.

Plaintiff argues all Unum can offer in this case is conjecture, not solid proof that Mr. Cooper had any sort of bleeding disorder. Plaintiff notes there are no coagulation studies in the record, as admitted by Unum's forensic pathologist. (AR737). Plaintiff argues even when Mr. Cooper's platelet levels were at their lowest, in the middle of his course of interferon therapy, Mr. Cooper reported no abnormal bleeding, no bleeding from his injection sites, and no bloody stools. He was specifically told to be on the lookout for these symptoms and to report them to the clinic, but he never made any such report. His platelet levels at the time of his death were 2-3 times higher than those interferon-induced lows.

Plaintiff argues there is no evidence that Mr. Cooper actually had any sort of bleeding disorder and there is substantial evidence that he did not. Plaintiff concedes Dr. Sweeney may be correct that coagulopathy is common in some patients with liver disease, but argues it was never established in Mr. Cooper.

Plaintiff argues that even though the medical examiner felt that Mr. Cooper's cirrhosis may have had something to do with his death, he could not state with any certainty the extent to which it did. His conclusions, as well as the conclusions of Dr. Sweeney, were based on what *normally* happens, not on what happened in Mr. Cooper's case specifically.

Defendant points to cases from the Sixth Circuit which make clear that exclusions like the one in this case preclude recovery "when death results from a pre-existing disease *or from a combination of accident and pre-existing disease*." *McGuire v. Reliance Standard Life Ins.*, No. 98-2231, 2000 WL 92264, *5 (6th Cir. Jan. 18, 2000) (emphasis added) (*quoting Berger v. Travelers Ins. Co.*, 149 N.W.2d 441, 442 (Mich. 1967)); *Criss*, 1992 WL 113370 at *6 (upholding denial of AD&D benefits based on the disease exclusion to the policy where the insured died of cardiac arrest from underlying heart disease during hospitalization following a car accident); *Klei v. Metro. Life Ins. Co.,* No. 91-CV-76942, 1992 WL 695749, *11 (E.D. Mich. Oct. 30, 1992) (upholding denial of AD&D benefits under disease exclusion to policy where insured died from acute alcohol intoxication subsequent to an automobile accident); *Ann Arbor Trust Co.,* 810 F.2d 591.

Defendant argues the Sixth Circuit's decision in *Ann Arbor Trust Co.* is particularly instructive. There, the decedent fell down the stairs of his home and sustained a laceration to his forehead. *Ann Arbor Trust Co.,* 810 F.2d at 592. Upon admission to the hospital, he was treated for the laceration, which began healing normally during the first few days after the fall. *Id*. Thereafter, the decedent began to have signs of internal bleeding and his condition deteriorated. *Id*. Decedent died at the hospital approximately eight days after his admission. *Id*. An autopsy identified the cause of the fatal bleeding was advanced nutritional cirrhosis of the liver, caused by decedent's alcohol consumption. *Id*. Plaintiff sued under three separate accidental death policies, each of which had exclusionary language similar to the Policy in the instant case. *Id*. The district court denied the insurers' motion for summary judgment, finding that "[d]espite the specific and explicit exclusionary language, . . . the proximate cause of the decedent's demise

was a material fact to be resolved by the jury." *Id*. at 593. At trial, two physicians opined that

the decedent's cirrhosis of the liver contributed to his coagulopathy and, but for his cirrhosis, his

fall and resulting injury would not have caused his death. *Id*. at 593 – 594. The jury returned a

verdict in favor of plaintiff, and the trial court denied the insurers' motion for judgment

notwithstanding the verdict. *Id*. at 592 – 593. The insurers appealed, asserting the trial court

erred in failing to grant their motions for directed verdict and for judgment as a matter of law.

*Id*. at 593. The Sixth Circuit reversed, and held "that no person could reasonably have

concluded that [decedent's] cirrhosis did not contribute to his death *at least indirectly or in*

*part*." *Id*. at 594 (emphasis added). Thus, the defendants were entitled to judgment as a matter

of law under the policy exclusion.[3] *Id*. In analyzing the language of the accidental death

policies at issue, the court stated:

> When a policy insuring against accidental death contains exclusionary
> language substantially to the effect that benefits are precluded where death
> directly or indirectly results from or is contributed to by disease, the inquiry is
> properly limited to determining if the accident alone was sufficient to cause death
> directly and independently of disease; **an exclusionary clause therefore**
> **precludes recovery where death results from a pre-existing disease <u>or from a**
> **combination of accident and pre-existing disease.</u>** Such policies are to be
> distinguished from those which do not express such specific exclusionary
> language, in which latter case the plaintiff's burden, in order to recover, is to
> prove that the decedent's accident was the direct and proximate cause of death.
>
> *Id*. at 593 (emphasis added).

---

[3] Although *Ann Arbor Trust Co.* was decided under state law, the court's discussion and
application of an exclusion virtually identical to the one here is highly persuasive. *See Criss*,
1992 WL 113370 at *3 ("Thus, while federal law clearly controls this case, the federal courts
may review relevant state law approaches in the area of insurance contract interpretation in an
attempt to develop this burgeoning area of federal common law.").

More recently, the District Court for the Northern District of Ohio held a similar policy exclusion[4] precluded coverage where the decedent, who fell and broke his neck, died of complications (chronic pneumonia and sepsis) from the fracture. *Murdock v. Metro. Life Ins. Co.*, No. 1:06CV02731, 2007 WL 6097205 (N.D. Ohio Dec. 31, 2007). Like the instant case, both the coroner's verdict and the autopsy report stated that while the manner of death – the neck fracture – was accidental, the death was "contributed to by" decedent's medical conditions including gastric ulcers, diabetes, and cardiovascular disease. *Id*. at * 2 – 3.

In *Murdock*, the Plaintiff sued under the decedent's accidental death policy. *Id*. at *1. Plaintiff asserted that there was no evidence in the record to support the conclusion that any of Plaintiff's pre-existing physical ailments contributed to his death and, further, the decedent was in good health prior to his fall. *Id*. at *6. The court held these considerations were "irrelevant to the analysis," and stated:

> The proper questions, framed in light of the Plan provisions, include only whether the femoral neck fracture suffered in the fall was the sole cause of [decedent's] death and whether any pre-existing physical illness contributed to his death. In other words, for purposes of the Plan, [decedent] could have been feeling healthy, strong, and robust (i.e., the opposite of weak) prior to falling, *but if some pre-existing physical illness nevertheless contributed to his death, the physical illness exclusion applies*.

*Id*. at *6 (emphasis added). Finding that any one of the decedent's conditions – gastric ulcers, diabetes, and cardiovascular disease – would be sufficient, standing alone, to trigger the "contributed to" language of the exclusion, the court upheld the plan administrator's denial of the claim. *Id*. at *7, 9.

---

[4] The policy exclusion provided: "we will not pay for any Covered Loss . . . [which] is caused or contributed to by . . . Physical or mental illness, diagnosis of or treatment for the illness." *Murdock*, 2007 WL 6097205 at *1.

I agree with Defendant that the *Ann Arbor* and *Murdock* decisions make clear the policy exclusion applies where, as here, the decedent's underlying illness contributed to his death. That is the case here. Plaintiff's claim is therefore excluded under the Policy.

Defendants argue superimposing a "substantially contributed to" clause is essentially a rewriting of the Policy language. They argue courts "should adhere to the literal language of accident insurance contracts except where public-policy considerations dictate a different course." *Citing Lingerfelt v. Nuclear Fuel Servs., Inc.*, No. 90-5320, 1991 WL 11615, *4 (6th Cir. Feb. 5, 1991). Because Plaintiff offers no public policy justification to depart from the plain language of this insurance contract, Plaintiff argues it must be enforced as written.

Defendant also disagrees that there is any long line of cases imposing the "substantially contributed to the loss" language. They assert none of the cases cited by Plaintiff even addresses the "contributed to" exclusionary language, much less holds that their exclusion requires a finding that the disease or illness "substantially contributed" to the loss. Rather, those cases only address coverage clauses containing the "independently of all other causes" or similarly-worded language. Additionally, those cases involve disability claims and not accidental death policies.

Defendant contends Plaintiff's discussion of the Fourth Circuit's decision in *Adkins v. Reliance Standard Life Ins.*, 917 F.2d 794 (4th Cir. 1990) is particularly inapposite, if not misleading. Defendant argues *Adkins* does not stand for the proposition cited by Plaintiff, and points out that the court went so far as to expressly state that the "contributed to" exclusionary clause *was not at issue* in that case. *Adkins*, 917 F.2d at 796.

Defendants argue Plaintiff's reliance on other cases cited in their breif is similarly flawed because they did not even address the "contributed to" exclusionary language at issue here.

Defendant argues Plaintiff's discussion of these cases altogether ignores that they have nothing to do with the "contributed to" exclusionary provision.

I do not conclude it is necessary to resolve that particular dispute because looking at the record as a whole I conclude Unum's decision to deny benefits remains proper. As the Death Certificate reflects, Dr. Deering found that Mr. Cooper's cirrhosis was a "significant condition contributing" to his death. (AR 102, Exh. 1). Additionally, Dr. Sweeney determined Mr. Cooper's "cirrhosis, which is a disease of the body, significantly contributed" to his death. (AR 738). There was a history of reported problems with cirrhosis of the liver and Pulmonary Hypertension. There is no material difference between the meaning of "significantly" and "substantially" in this particular context.

III.

Finally, Plaintiff argues Unum's application of the exclusionary language - "caused by, contributed to by, or resulting from..." is overbroad and contrary to established case law. Plaintiff argues application of the exclusionary language in the policy at issue here has been limited by another line of cases, including a case from this Court.

Plaintiff points to *Goetz v. Greater Georgia Life Insurance Company*, 649 F.Supp.2d 802 (E.D. Tenn. 2009), in which Mr. Goetz had a past history of alcoholism. One night, while drinking, he suffered several unwitnessed accidental falls at home. He suffered a subdural hematoma large enough to cause brain damage, after which he was totally disabled from his previous occupation. *Id.* at 807. The insurance company did not dispute the extent of Mr. Goetz's disability, but denied his claim based on a policy exclusion for disabilities "caused by, contributed to by, or resulting from" a pre-existing illness or disease. *Id.* at 806. The insurer's

rationale was that Mr. Goetz's falls were caused by alcohol use, a symptom of the disease of alcoholism, and that his prescribed use of Plavix, an anti-coagulant drug, contributed to the extent of his bleeding. *Id.* at 810-11. Judge Edgar found that the proof the insurance company offered to show the extent of Mr. Goetz's alcoholism, or that it had anything to do with his injury, was "vague, scant, and somewhat speculative." *Id.* at 824.

The Court concluded that although Mr. Goetz's history of alcohol consumption may have "contributed in some way" to his injury, "it is not a close enough connection to exclude under ERISA's requirements…" *Id.* at 825. The Court stated "there is a limit under ERISA to the extent to which the term 'contributed to' may be stretched." *Id.* *See also Vander Pas v. Unum Life Ins. Co. of Am.*, 7 F.Supp.2d 1011 (E.D. Wis. 1998) (finding that Unum improperly denied benefits for subdural hematoma based on a tenuous connection to prescribed anti-coagulant drugs under "caused by, contributed to by, or resulting from" exclusionary language).

Plaintiff argues there are two overarching principles stated in *Goetz* and the cases on which it relies: 1) that the insurer must come forward with significant proof of the illness it wants to exclude, and 2) that such illness must have a proximate role in the causation of the ultimate loss, be it death or disability. They argue this is the same two-pronged test announced by the Fourth Circuit in *Quesinberry*. 987 F.2d at 1028. They argue Unum cannot bear its burden of proving by a preponderance of the evidence that Mr. Cooper both *had* a bleeding disorder, and that it *substantially contributed* to his death. Plaintiff argues this case is similar to *Goetz*, that the evidence that Unum relies on to establish that Mr. Cooper had a bleeding disorder is "vague, scant, and somewhat speculative."

The Defendant disagrees that *Goetz* supports Plaintiff's claim and I agree with their analysis. In *Goetz*, plaintiff sought benefits under a group long-term disability insurance policy which excluded coverage for any disability "caused by, contributed to by, or resulting from a pre-existing condition." *Goetz*, 649 F.Supp.2d at 815. The sole issue Judge Edgar considered in *Goetz* was whether plaintiff's alleged chronic alcoholism constituted a pre-existing condition which "caused, contributed to, or resulted" in Plaintiff's disability. In *Goetz,* the causal link between the pre-existing condition and the disability may be summarized as follows: the plaintiff had a "vague and undefined" alcohol problem which, in turn, possibly may have caused him to have one or more falls which, in turn, caused a head injury and resulting subdural hemorrhage which, in turn, caused plaintiff's disability. *Id*. at 825.

The court found the number of causal steps between a "vague and undefined" alcoholism and a disabling head injury too attenuated and speculative because there was no evidence in the record to explain the circumstances of Mr. Goetz's falls. *Id*. at 823 – 826. Thus, the court concluded that while it was possible Mr. Goetz's history of alcohol consumption contributed in some vague way to his ultimate head injuries, the chain of causation was too remote for the application of the pre-existing condition exclusion. *Id*.

I agree with the Defendant, that is not the case here. In this case the direct causal nexus between Mr. Cooper's cirrhosis and his abdominal bleeding is far from the tenuous connection in *Goetz* involving alcoholism and a subdural hemorrhage. The Administrative Record is replete with medical evidence that cirrhosis was "very relevant" and "definitely . . . a contributing factor" to Mr. Cooper's fatal abdominal bleeding. (AR 817). As Dr. Deering and Dr. Sweeney make clear, there is no question that Mr. Cooper's cirrhosis was *a contributory cause* of his

death.  (AR 102; 157 – 164; 730 – 738; 817).  Conversely, in *Goetz* there was a complete lack of medical evidence to connect the plaintiff's alcoholism and his disabling injury.  Thus, the reasoning of *Goetz,* and its related proximate cause analysis, has no application to the facts of this case.

In this case The Administrative Record contains medical opinions by two physicians: Dr. Thomas Deering, the forensic pathologist (for the State Medical Examiner) who performed the autopsy on Mr. Cooper; and Dr. Kristin Sweeney, the forensic pathologist who reviewed the claim file on behalf of Unum.  Both of these physicians opined that Mr. Cooper's cirrhosis of his liver was a significant contributing cause of his death.  There was a past history of cirrhosis as a diagnosis in his medical records.  Plaintiff has offered no medical evidence or opinion by another physician to refute Dr. Deering or Dr. Sweeney.  Thus, Plaintiff cannot, and did not, meet her burden to show Mr. Cooper died of a bodily injury caused by external, violent and accidental means and was independent of any other cause.  I further conclude the claim is also excluded under the terms of the policy by reason of Mr. Cooper's cirrhosis, which contributed to his death.  Defendants point to the March 4, 2009 letter from Dr. Deering in response to Plaintiff's request that he alter the Death Certificate to support her benefits claim.  In that letter Dr. Deering notes "cirrhosis of the liver becomes very relevant and is definitely, in my opinion, a contributing factor to the amount of the bleeding that was found."   (AR 817).  I conclude the Defendants have shown by the preponderance of the evidence that coverage would be excluded under the policy provision because the evidence adequately supports the conclusion that a disease of the body or bodily infirmity contributed to Mr. Cooper's death.

Based on the facts in the administrative record, I conclude 1) Plaintiff failed to meet her burden to show Mr. Cooper's death was solely caused by external, violent and accidental means, independent of any other cause and 2) Defendant has met its burden to show cirrhosis "substantially contributed" to plaintiff's death and thus coverage is not afforded under the policy exclusion.

Conclusion

Having carefully reviewed the Record and pleadings, I RECOMMEND:[5]

1) Plaintiff's motion for judgment on the ERISA record [Doc 13] be DENIED,

2) Defendant's motion for judgment on the record [Doc 15] be GRANTED, and

3) Defendant's decision denying Plaintiff benefits under a Group Accidental Death and Dismemberment Policy be AFFIRMED.

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).